1
2
3
4
5
6
7
8          UNITED STATES DISTRICT COURT
9          CENTRAL DISTRICT OF CALIFORNIA
10
11   KAI ALMODOVAR,                    )   Case No. CV-11-9227-SP
12              Plaintiff,             )
                                       )
13        v.                           )   MEMORANDUM OPINION AND
                                       )   ORDER
14   MICHAEL J. ASTRUE,                )
15   Commissioner of Social Security   )
     Administration,                   )
16                                     )
                Defendant.             )
17   _____  )

18
19                         **I.**
20                    **INTRODUCTION**

21        On November 8, 2011, plaintiff Kai Almodovar filed a complaint against

22   defendant Michael J. Astrue, seeking a review of a denial of a period of disability[1]

23   and Disability Insurance Benefits ("DIB").  Both plaintiff and defendant have

24   _____

25        [1]  This alleged period of disability is not a closed period.  Plaintiff is currently
     disabled.  In order to receive benefits, plaintiff must establish that his disability
26   began on or prior to the expiration of his insured status, that is, his date last
     insured.  *See Flaten v. Sec'y*, 44 F.3d 1453, 1458 (9th Cir. 1995).
27
28                              1

consented to proceed for all purposes before the assigned Magistrate Judge pursuant to 28 U.S.C. § 636(c).  The court deems the matter suitable for adjudication without oral argument.

The overarching issue in this case is whether the Appeals Council ("AC") erred in finding that plaintiff was not disabled prior to the date last insured ("DLI").  Plaintiff presents six specific disputed issues for decision:  (1) whether the AC properly determined that plaintiff did not have the severe impairment of stasis dermatitis prior to the DLI;[2] (2) whether the AC properly determined that plaintiff did not meet Listing 9.08(A) or equal Listing 1.02 of 20 C.F.R. part 404, Subpart P, Appendix 1 (the "Listings"); (3) whether the AC properly considered plaintiff's credibility; (4) whether the AC properly determined plaintiff's residual functional capacity; (5) whether the AC should have retained a consultative examiner; and (6) whether the AC properly applied Rule 201.21 of the Medical Vocational Guidelines found at 20 C.F.R. part 404, Subpart P, Appendix 2 ("Grid").  Memorandum in Support of Plaintiff's Complaint ("P. Mem.") at 8; Defendant's Memorandum in Support of Answer ("D. Mem.") at 2-9.

Having carefully studied, inter alia, the parties's written submissions, the Administrative Record ("AR"), and the decision of the AC, the court concludes that, as detailed herein, the AC improperly determined that plaintiff did not have the severe impairment of stasis dermatitis prior to the DLI, but the error was harmless.  As for the remaining issues, the AC properly determined that plaintiff

---

[2]    Plaintiff characterized the first issue as whether his disability arose prior to December 31, 2006, the date last insured.  P. Mem. at 8; Reply at 1.  This is the central issue in this appeal.  As discussed *infra*, the first issue, as argued by plaintiff, is actually whether the AC properly found that plaintiff did not suffer from the severe impairment of stasis dermatitis prior to the date last insured.

did not meet the Listings, properly considered plaintiff's credibility, properly assessed plaintiff's residual functional capacity, properly exercised its discretion to not secure a consultative examiner, and properly applied Grid Rule 201.21. Consequently, this court affirms the decision of the Commissioner of the Social Security Administration ("Commissioner") denying benefits.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, who was 40 years old on the date of his April 4, 2011 administrative hearing, is a high school graduate and completed some vocational school. AR at 25, 113, 119. His past relevant work includes employment as a meat cutter. *Id.* at 120, 127.

On May 5, 2010, plaintiff filed an application for DIB and a period of disability, alleging an onset date of June 1, 2002, due to diabetes, abscesses, spinal injury, kidney failure, and varicose veins.[3] *Id.* at 105-08, 118. The Commissioner denied plaintiff's application initially and upon reconsideration, after which he filed a request for a hearing. *Id.* at 53-58, 67-68.

On April 4, 2011, plaintiff, represented by counsel, appeared and testified at a hearing before the administrative law judge ("ALJ"). *Id.* at 25-42. At the hearing, plaintiff amended the onset date to September 23, 2005. *Id.* at 41. The ALJ granted benefits on April 5, 2011. *Id.* at 20-24.

The ALJ Decision

Applying the well-known five-step sequential evaluation process, the ALJ found, at step one, that plaintiff did not engage in substantial gainful activity from

---

[3]     Plaintiff had filed a prior application on October 25, 2001, alleging disability based on legs, arm, and back pain. AR at 178-80. The Commissioner denied the first application. *Id.* at 114.

3

1    September, 23, 2005, the alleged onset date, through December 31, 2006, the DLI.
2    *Id.* at 22.

3        At step two, the ALJ found that plaintiff suffered from the following severe
4    impairments:  diabetes mellitus, uncontrolled; morbid obesity; peripheral vascular
5    disease with edema; leg varices; stasis dermatitis in both lower legs; low back pain
6    with chronic back strain; and asthma.  *Id.*

7        At step three, the ALJ found that plaintiff's impairment did not meet or
8    medically equal one of the listed impairments set forth in the Listings.  *Id.*

9        The ALJ then assessed plaintiff's residual functional capacity ("RFC")[4] and
10   determined that he had the RFC to perform sedentary work with the following
11   limitations:  plaintiff could stand/walk less than two hours a day; could sit less
12   than six hours a day; could lift/carry twenty pounds at a time less than
13   occasionally; required the ability to change positions at will between sitting,
14   standing, and walking; and required several additional breaks per day due to
15   diabetes symptoms and medications.  *Id.*

16       The ALJ found, at step four, that plaintiff was unable to perform his past
17   relevant work.  *Id.* at 23.

18        At step five, the ALJ found there are no jobs that exist in significant
19   numbers in the national economy that plaintiff can perform.  *Id.*  The ALJ
20   specifically noted that plaintiff is not able to perform the full range of sedentary
21   work under his assessed RFC, and that "the additional limitations so narrow the

22

23       [4]   Residual functional capacity is what a claimant can do despite existing
24   exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152,
25   1155-56 n.5-7 (9th Cir. 1989).  "Between steps three and four of the five-step
     evaluation, the ALJ must proceed to an intermediate step in which the ALJ
26   assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486
27   F.3d 1149, 1151 n.2 (9th Cir. 2007).

28                                          4

range of work the [plaintiff] might otherwise perform that a finding of 'disabled' is appropriate" under Grid Rule 201.21. *Id.* at 24.

The Appeals Council's Decision

On June 3, 2011, the AC sent plaintiff a notice of review, advising him that it intended to issue a decision finding petitioner not disabled because the ALJ's decision contained an error of law and was not supported by substantial evidence. *Id.* at 10-15. The AC provided plaintiff the opportunity to submit new evidence and comments, which plaintiff did not. *Id.* at 5. The AC denied benefits on September 13, 2011. *Id.* at 5-9.

Applying the five-step sequential evaluation process, the AC found, at step one, that the plaintiff did not engage in substantial gainful activity since September 23, 2005. *Id.* at 8.

At step two, the AC found that petitioner suffered from the following severe impairments: diabetes mellitus; morbid obesity; chronic lower back strain; and asthma. *Id.*

The AC found, at step three, that plaintiff's impairment did not meet or medically equal one of the listed impairments set forth in the Listings. *Id.*

The AC then assessed plaintiff's RFC and determined that plaintiff had the RFC to perform the full range of sedentary work for the relevant period. *Id.* at 7-8.

At step four, the AC found that plaintiff was unable to perform his past relevant work. *Id.* at 8.

Finally, at step five, the AC found that plaintiff's ability to perform the full range of sedentary work prior to the DLI necessitated a finding of not disabled under Grid Rule 201.21. *Id.* at 7-8. Consequently, the AC concluded that plaintiff was not disabled from September 23, 2005 through the DLI. *Id.* at 8-9.

1    The decision of the Appeals Council stands as the final decision of the

2    Commissioner.

3                                    **III.**

4                          **STANDARD OF REVIEW**

5        This court is empowered to review decisions by the Commissioner to deny

6    benefits.  42 U.S.C. § 405(g).  The findings and decision of the Commissioner

7    must be upheld if they are free of legal error and supported by substantial

8    evidence.  *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001) (as

9    amended).  But if the court determines that the AC's findings are based on legal

10   error or are not supported by substantial evidence in the record, the court may

11   reject the findings and set aside the decision to deny benefits.  *Aukland v.*

12   *Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d

13   1144, 1147 (9th Cir. 2001).

14       "Substantial evidence is more than a mere scintilla, but less than a

15   preponderance."  *Aukland*, 257 F.3d at 1035.  Substantial evidence is such

16   "relevant evidence which a reasonable person might accept as adequate to support

17   a conclusion."  *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276

18   F.3d at 459.  To determine whether substantial evidence supports the AC's

19   finding, the reviewing court must review the administrative record as a whole,

20   "weighing both the evidence that supports and the evidence that detracts from the

21   [AC's] conclusion."  *Mayes*, 276 F.3d at 459.  The AC's decision "'cannot be

22   affirmed simply by isolating a specific quantum of supporting evidence.'"

23   *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th

24   Cir. 1998)).  If the evidence can reasonably support either affirming or reversing

25   the AC's decision, the reviewing court "'may not substitute its judgment for that

26

27

28                                    6

1    of the ALJ.'"  *Id.*  (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir.

2    1992)).

3                                              **IV.**

4                                         **DISCUSSION**

5    **A.    The Appeals Council Committed Harmless Error at Step Two**

6            Plaintiff contends that the AC improperly found that he did not have the

7    severe impairment of stasis dermatitis during the relevant period.[5]  P. Mem. at 10-

8    12.  Specifically, plaintiff argues that there was medical evidence of stasis

9    dermatitis before the expiration of the insured period.  *Id.* at 11.  The court agrees,

10   but the error is harmless.

11           At step two, the Commissioner considers the severity of the claimant's

12   impairment.  20 C.F.R. § 416.920 (a)(4)(ii).  "[T]he step-two inquiry is a de

13   minimis screening device to dispose of groundless claims."  *Smolen v. Chater*, 80

14   F.3d 1273, 1290 (9th Cir. 1996).

15           The AC determined that plaintiff had the following severe impairments:

16   diabetes mellitus; morbid obesity; chronic lower back strain; and asthma.  AR at 8.

17   Contrary to the ALJ, the AC did not find that plaintiff had the severe impairments

18   of peripheral vascular disease with edema, leg varises, and stasis dermatitis during

19   the relevant period.  *Id.* at 8, 22.  Indeed, the AC specifically stated that the

20   medical records indicated that plaintiff's stasis dermatitis began in 2008.  *Id.* at 7.

21           The AC erred when it determined that plaintiff did not have the severe

22   impairment of stasis dermatitis prior to the DLI.  On September 23, 2005, Dr.

23   Simon Valencia examined plaintiff and found stasis dermatitis on both legs.  *Id.* at

24   

25           [5]   Plaintiff implies that the AC also erred when it failed to find that he had the
26   severe impairment of peripheral neuropathy, but other than defining this disorder,
27   plaintiff fails to make this argument.  *See* P. Mem. at 8-12.

28                                              7

237.  Although Dr. Valencia did not actually diagnose plaintiff with stasis dermatitis,[6] he listed the condition among the findings.  *Id*.  Accordingly, the AC incorrectly stated that there was no medical evidence of stasis dermatitis during the relevant period and should have found that plaintiff also had the severe impairment of stasis dermatitis.

     The error, however, was harmless.  To the extent that plaintiff argues that the stasis dermatitis finding rendered him presumptively disabled, he is wrong.  A mere finding of stasis dermatitis on one occasion does not render plaintiff disabled.[7]  The medical evidence from the relevant period, which consists of a mere seven pages (not including duplicates), shows that plaintiff did not have chronic or any recurring bouts of stasis dermatitis prior to the DLI.  *See id.* at 237, 396-401.  None of these medical records contain any references to stasis dermatitis, and only one treatment note includes an observation of edema.  *See, e.g.*, *id.* at 396-401.  Indeed, a November 5, 2007 hospital visit, which was ten months after the insured period and over twenty-five months after the alleged onset of stasis dermatitis, was the first indication that plaintiff suffered a reoccurrence of stasis dermatitis.[8]  *Id.* at 537-75.  Moreover, the medical records

---

[6]   Dr. Valencia diagnosed plaintiff with:  diabetes mellitus, reasonably controlled; possible congestive heart failure; morbid obesity; varicose veins, hypertension; and depression.  AR at 237.

[7]   There is no Listing for stasis dermatitis.  The only mention of stasis dermatitis in the Listings is under Listing 4.11(B) which requires a claimant to demonstrate chronic venous insufficiency of a lower extremity, with incompetency or obstruction of the deep venous system and, among other conditions, stasis dermatitis.  Plaintiff was not diagnosed with chronic venous insufficiency.

[8]   The administrative record contains no medical records between March 6, 2006 and November 5, 2007.  A notation on plaintiff's medical records indicates

show that plaintiff did not suffer consistent gait instability until February 2010, when he was prescribed a walker. *Id.* at 265, 284, 743. These factors are substantial evidence that plaintiff was not disabled due to his stasis dermatitis or other conditions prior to the DLI.

For similar reasons, and as discussed more fully in section IV.D below, the single pre-DLI stasis dermatitis finding does not affect plaintiff's RFC. Accordingly, although the AC erred in not finding that plaintiff had the severe impairment of stasis dermatitis prior to the date last insured, the AC's failure to so find was harmless.

**B.   The AC Properly Found That Plaintiff's Condition Did Not Meet Listing 9.08(A) or Equal Listing 1.02**

Plaintiff claims that the AC incorrectly found that his condition did not meet or equal a Listing prior to the DLI. P. Mem. at 12-16. Specifically, plaintiff contends that his condition both met Listing 9.08(A) and equaled Listing 1.02.[9] *Id.*

At step three, Social Security regulations provide that a claimant is disabled if he or she meets or medically equals a listed impairment set forth in the Listings. 20 C.F.R. §§ 416.920(a)(4)(iii) ("If you have an impairment(s) that meets or equals one of our listings . . . we will find that you are disabled"), 416.920(d) ("If you have an impairment(s) which . . . is listed in Appendix 1 or is equal to a listed impairment(s), we will find you disabled without considering your age, education,

that plaintiff sought treatment on October 30, 2007, but the administrative record does not include the treatments notes from that visit. AR at 538.

[9]   In his argument, plaintiff states that he met Listing 9.01(A), but defines Listing 9.08(A) and subsequently refers to Listing 9.08(A). P. Mem. at 14-16. Similarly, plaintiff argues that his condition equaled Listings 1.01 and 1.02. *Id*. at 16. The references to Listings 9.01(A) and 1.01 appear to be typographical errors.

and work experience"). In other words, if a claimant meets or equals a Listing, he or she will be found disabled at this step "without further inquiry." *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999). In such case, there is no need for the ALJ to complete steps four and five of the sequential process. *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001).

"To *meet* a listed impairment, a claimant must establish that he or she meets each characteristic of a listed impairment relevant to his or her claim." *Tackett*, 180 F.3d at 1099 (emphasis in original).

To establish that an impairment is medically equivalent to a listed impairment, it is the claimant's burden to show that his impairment "is at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 416.926(a). For an impairment or combination of impairments to equal a Listing, the claimant "must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." *Sullivan v. Zebley*, 493 U.S. 521, 531, 110 S. Ct. 885, 107 L. Ed. 2d 967 (1990) (emphasis in original), superseded by statute on other grounds; see 20 C.F.R. § 416.926(a)-(b); Social Security Ruling ("SSR") 83-19 (an impairment is "equivalent" to a listing only if a claimant's symptoms, signs, and laboratory findings are "at least equivalent in severity" to the criteria for the listed impairment most like the claimant's impairment). A determination of medical equivalence must rest on objective medical evidence. *See Lewis*, 236 F.3d at 514 ("A finding of equivalence must be based on medical evidence only."). "If the findings related to [the claimant's] impairment(s) are at least of equal medical significance to those of a listed impairment, [the Commissioner] will find that [the claimant's] impairment(s) is medically equivalent to the analogous listing." 20 C.F.R. § 416.926(b)(2).

10

1

2

Here, plaintiff has failed to demonstrate that he met Listing 9.08(A) or equaled Listing 1.02 during the relevant period.

3

**1.      Listing 9.08(A)**

4

5

6

7

8

9

10

Plaintiff contends that he has a history of gait instability as evidenced by: (1) varicose veins and leg numbness since 2001; (2) lower extremity swelling since 2005; (3) the use of a cane since 2005; and (4) the use of a walker since 2010.  P. Mem. at 14.  In February 2010, Dr. Elsa M. Aguiniga identified diabetic neuropathy as the cause of the gait instability.[10]  *Id.* at 14-15; AR at 263-64. Plaintiff argues that the diagnosis and past symptoms established that he met Listing 9.08(A) prior to the DLI.  P. Mem. at 15.  The court disagrees.

11

12

13

14

15

In order to be considered presumptively disabled under Listing 9.08(A), a claimant must show that he or she has diabetes mellitus with "[n]europathy demonstrated by significant and persistent disorganization of motor function in two extremities resulting in sustained disturbance of gross and dexterous movements, or gait and station."  Listing 9.08(A).

16

17

18

19

20

21

22

Substantial evidence supports the AC's finding that plaintiff did not meet Listing 9.08(A) during the relevant period.  Most important, plaintiff was not diagnosed with neuropathy until February 2010, over three years after the DLI. AR at 263-64.  And the medical evidence does not support plaintiff's contention that the neuropathy arose prior to the DLI; it does not demonstrate that plaintiff had "significant and persistent disorganization of motor function in two extremities."  Listing 9.08(A).  Other than plaintiff's self-prescribed use of a cane

23

24

25

26

27

---

[10]   In the P. Mem., plaintiff contends that he was diagnosed with neuropathy in February 2006.  P. Mem. at 14-15.  Plaintiff makes the same allegation in the Reply and expressly claims that the diagnosis was "Pre-DLI."  Reply at 4.  These assertions are incorrect.  The neuropathy diagnosis was made on February 9, 2010. AR at 263-64.

28

on February 15, 2006, no physician noted any gait instability during the relevant period.  AR at 397; *see id.* at 237, 396, 398-401.  Moreover, the medical evidence subsequent to the insured period shows that plaintiff had a weak, but not impaired gait on November 5, 2007 (*id.* at 573), no gait instability on June 17, 2008 (*id.* at 743), and could walk over half a mile without difficulty as recently as January 29, 2010 (*id.* at 284).

Given this substantial evidence, the AC properly determined that plaintiff's condition did not meet Listing 9.08(A) during the relevant period.

### 2.    Listing 1.02

In order to equal Listing 1.02,[11] plaintiff must demonstrate that his condition resulted in an inability to ambulate effectively.[12] As discussed above, other than

---

[11]    Although not expressly stated, plaintiff appears to claim that his condition was equivalent to Listing 1.02(A), which states that a claimant is presumptively disabled if he has a:  "Major dysfunction of a joint(s) (due to any cause): Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With: A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b."

[12]    "To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's

1   plaintiff's self-prescribed use of a cane in February 2006 (AR at 397) there is no

2   medical evidence that plaintiff had any gait instability, much less that he could not

3   ambulate effectively prior to the date last insured.  To the contrary, the medical

4   evidence after the insured period shows that until January 2010, he was able to

5   ambulate effectively a significant portion of the time.  *Id.* at 284, 573, 743.

6   Indeed, as recently as January 2010, plaintiff could walk half a mile without

7   difficulty.  *Id.* at 284.

8        Accordingly, the AC's determination that plaintiff did not meet or equal any

9   Listing prior to the date last insured was supported by substantial evidence.

10  **C.    The AC Properly Considered Plaintiff's Credibility**

11       Plaintiff contends that the AC failed to properly consider plaintiff's

12  credibility.  P. Mem. at 16-23.  Specifically, plaintiff argues that the five reasons

13  the AC provided for discounting plaintiff's credibility were not clear and

14  convincing reasons.  *Id.* at 19-23.  The court disagrees.

15       The Commissioner must make specific credibility findings, supported by the

16  record.  SSR 96-7p.  To determine whether testimony concerning symptoms is

17  credible, the Commissioner engages in a two-step analysis.  *Lingenfelter v. Astrue*,

18  504 F.3d 1028, 1035-36 (9th Cir. 2007).  First, the Commissioner must determine

19  whether a claimant produced objective medical evidence of an underlying

20  impairment "'which could reasonably be expected to produce the pain or other

21  symptoms alleged.'"  *Id.* at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344

22  (9th Cir. 1991) (en banc)).  Second, if there is no evidence of malingering, an

23  "ALJ can reject the claimant's testimony about the severity of her symptoms only

24  by offering specific, clear and convincing reasons for doing so."  *Smolen*, 80 F.3d

25

26  home without the use of assistive devices does not, in and of itself, constitute

27  effective ambulation."  Listing 1.00(B)(2)(b)(2).

28                                    13

1    at 1281; *Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003).  The

2    Commissioner may consider several factors in weighing a claimant's credibility,

3    including:  (1) ordinary techniques of credibility evaluation such as a claimant's

4    reputation for lying; (2) the failure to seek treatment or follow a prescribed course

5    of treatment; and (3) a claimant's daily activities.  *Tommasetti v. Astrue*, 533 F.3d

6    1035, 1039 (9th Cir. 2008); *Bunnell*, 947 F.2d at 346-47.

7        At the first step, the AC found that plaintiff's medically determinable

8    impairments could reasonably be expected to cause the symptoms alleged.  AR at

9    6.  At the second step, because the AC did not find any evidence of malingering,

10   the AC was required to provide clear and convincing reasons for discounting

11   plaintiff's credibility.  Here, the AC discounted plaintiff's credibility because:  (1)

12   the symptoms were not supported by the pre-DLI medical record; (2) plaintiff's

13   testimony provided little evidence that he was disabled prior to the DLI; and (3)

14   his alleged symptoms were inconsistent with the post-DLI evidence.[13]  *Id.* at 6-7.

15   These were clear and convincing reasons supported by substantial evidence.

16       First, the AC correctly noted that the scant pre-DLI medical evidence did

17   not support the symptoms alleged.[14]  *Id.*; *see also Rollins v. Massanari*, 261 F.3d

18

19       [13]   Plaintiff argues that the AC provided five reasons for discounting his

20   credibility:  (1) the absence of pre-DLI medical evidence; (2) plaintiff's daily

21   activities; (3) plaintiff cleaned his wound twice a day; (4) subsequent to the DLI,

     plaintiff could walk half a mile without any difficulty; and (5) plaintiff could

22   ambulate with a steady gait when using a cane.  P. Mem. at 19-23.  The third

23   reason cited by plaintiff was not a reason provided by the AC for discounting

     plaintiff's credibility, but rather a discussion of plaintiff's testimony.  The

24   remaining reasons are better summarized as the court has done.

25       [14]   Specifically, the AC noted that only five of the exhibits, one of which was a

26   duplicate, were medical records from prior to the DLI.  AR at 6.  The AC is

27   incorrect in that there were actually seven exhibits containing records from prior

28                                      14

853, 856-57 (9th Cir. 2001) (lack of objective medicine supporting symptoms is one factor in evaluating credibility). The pre-DLI medical evidence shows that: petitioner experienced back pain and swelling prior to the DLI (*see, e.g.*, *id.* at 190, 218, 221, 232, 405); Dr. Valencia found stasis dermatitis on both legs on September 23, 2005 (*Id.* at 237); and plaintiff used a cane on February 15, 2006 (*Id.* at 397). But the remaining pre-DLI medical evidence reflects that plaintiff did not have chronic edema or stasis dermatitis, and no physician prescribed a cane. *See generally id.* at 396-401. Although a lack of medical evidence supporting plaintiff's alleged symptoms cannot be the sole reason for rejecting his testimony, it can be one of several factors used in evaluating the credibility of his subjective complaints. *See Rollins v. Massanari*, 261 F.3d 853, 856-57 (9th Cir. 2001).

Second, the AC found that plaintiff's hearing testimony did not fully support his claims. At the hearing, plaintiff testified that he began to use a cane around 2005 and 2006 and had leg swelling, pain, and abscesses since 2005. *Id.* at 32-33, 35-36. But, as the AC noted, plaintiff also testified that he did not require diabetic shoes until 2009, or help with his daily activities until 2008 or 2009. *Id.* at 7, 32, 34. Plaintiff's testimony was inconsistent and, as a whole, did not support plaintiff's claims.

Finally, the AC asserted that records subsequent to the DLI reflect abilities inconsistent with plaintiff's claims. *Id.* at 7. Specifically, the AC cites to plaintiff's own January 29, 2010 report that he was normally able to walk half a mile without difficulty, his ability to ambulate with a steady gait while using a cane, his "good exercise tolerance," and his ability to carry out activities of daily

to the expiration of the insured period, of which only seven pages are from the period between the alleged onset date and the DLI. *See id.* at 237, 396-401. Nevertheless, the AC is correct that the medical evidence did not support plaintiff's allegations.

15

1   living in the hospital. *Id.* at 7. The first two reasons cited are clear and

2   convincing.

3   The ability to walk half a mile without any difficulty and to ambulate with a

4   steady gait with a cane contradicts plaintiff's contention that he had a sustained

5   disturbance of gross and dexterous movements, an inability to ambulate

6   effectively, and disabling pain. *Id.* at 284-85, 923. Plaintiff does not deny that he

7   could walk half a mile without difficulty in 2010, but instead argues that his

8   condition became progressively impaired such that he could not walk that distance

9   in 2011 and half a mile is less than the occasional standing required for sedentary

10   work.[15]  P. Mem. at 21-22; AR at 7, 284-85. Neither of plaintiff's arguments are

11   meritorious. Whether plaintiff required a walker in 2011 is irrelevant to plaintiff's

12   RFC prior to his DLI. Moreover, by plaintiff's own logic, his condition must have

13   been substantially better in 2005-2006 than in January 2010, when he was able to

14   walk half a mile without difficulty. And an RFC of sedentary work does not

15   require plaintiff to stand continuously for one-third of the time, but only that he

16   able to stand up to one-third of the time.

17   The court agrees with plaintiff that the last two reasons provided were not

18   clear and convincing. Plaintiff's activities of daily living at the hospital were not

19   equivalent to his daily activities at home, and the "good exercise tolerance"

20   pertained to plaintiff's pulmonary functions. AR at 286-87. Although the AC

21   included reasons that were not clear and convincing, their inclusion was harmless

22   because the AC provided substantial other clear and convincing reasons for

23

24   ───────────────

25   [15]  "Jobs are sedentary if walking and standing are required occasionally and

26   other sedentary criteria are met." 20 C.F.R. § 416.967(a). "'Occasionally' means

27   occurring from very little up to one-third of the time." SSR 83-10, 1983 WL
     31251.

28                                         16

1  discounting plaintiff's credibility.  Accordingly, the AC did not err in discounting
2  plaintiff's credibility.

3  **D.    The AC Properly Determined Plaintiff's RFC and Was Not Obligated
4         to Retain a Consultative Examiner**

5      Plaintiff argues that the AC failed to properly assess his RFC.  P. Mem. at
6  23-24.  Specifically, plaintiff claims that the AC's only basis for reaching this
7  determination was a finding that plaintiff had "good exercise tolerance" in relation
8  to his pulmonary capacity.  P. Mem. at 23.  Plaintiff argues that the finding was
9  not supported by medical expertise and the AC should have secured a consultative
10 examiner.  *Id.* at 24-26.

11     RFC is what one "can still do despite [his or her] limitations."  20 C.F.R.
12 § 416.945(a)(1).  The Commissioner reaches an RFC determination by reviewing
13 and considering all of the relevant evidence.  *Id.*  When the record is ambiguous,
14 the Commissioner has a duty to develop the record.  *See Webb v. Barnhart*, 433
15 F.3d 683, 687 (9th Cir. 2005); *see also Mayes*, 276 F.3d at 459-60 (ALJ has a duty
16 to develop the record further only "when there is ambiguous evidence or when the
17 record is inadequate to allow for proper evaluation of the evidence"); *Smolen*, 80
18 F.3d at 1288 ("If the ALJ thought he needed to know the basis of [a doctor's]
19 opinion[ ] in order to evaluate [it], he had a duty to conduct an appropriate inquiry,
20 for example, by subpoenaing the physician[ ] or submitting further questions to
21 [him or her].").  This may include retaining a medical expert or ordering a
22 consultative examination.  20 C.F.R. § 416.919a(a).  The Commissioner may order
23 a consultative examination when trying to resolve an inconsistency in evidence or
24 when the evidence is insufficient to make a determination.  20 C.F.R.
25 § 416.919a(b).

26
27
28                                              17

1    Here, based on the entire record – not just the "good exercise tolerance"

2 finding – the AC determined that plaintiff had the RFC to perform the full range of

3 sedentary work during the relevant period.  AR at 7.  In reaching this

4 determination, the AC relied not only on the medical evidence prior to the DLI,

5 but also the evidence after the insured period.

6    The AC noted that there was little medical evidence prior to the DLI.  *Id.* at

7 6.  Prior to the DLI, no physician offered an opinion on any functional limitations.

8 The medical records reflect complaints of leg and back pain and a September 23,

9 2005 diagnosis of stasis dermatitis.  *Id.* at 237; *see, e.g., id.* at 190, 218.  The only

10 inference of a functional limitation was plaintiff's self-prescribed use of a cane on

11 February 15, 2006.  *Id.* at 397.  Two state agency physicians reviewed plaintiff's

12 medical records and concluded that there was insufficient evidence from plaintiff's

13 alleged onset of disability through the DLI to reach an RFC determination.  *Id.* at

14 390-91, 518-19.

15    But there was sufficient medical evidence after the relevant period for the

16 AC to conclude that plaintiff had the RFC to perform the full range of sedentary

17 work.  The AC noted that plaintiff did not wear diabetic shoes until 2009 or need

18 help with his daily activities until 2008 or 2009.  *Id.* at 7, 32, 34.  The medical

19 records reflect that twice in 2008, plaintiff was observed by hospital staff to have

20 no physical limitations.  *Id.* at 240, 743.  And as recently as January 2010, plaintiff

21 was observed as having a normal gait and no edema, as well as reporting that he

22 could walk half a mile without any difficulty.  *Id.* at 284-86.

23    Although it may appear from the state agency physicians' findings that

24 plaintiff's case presented a situation requiring a consultative examination, the AC

25 properly exercised its discretion not to secure one.  First, the AC did not base its

26 determination solely on the pre-DLI evidence.  Instead, the AC also relied on post-

27

28                                          18

DLI evidence, including plaintiff's own testimony.  Second, a consultative examiner would have been of no assistance because a present-day examination would not be able to shed any light on plaintiff's condition and RFC prior to the DLI.  *See, e.g.,Trefcer v. Astrue*, No. 11-1436, 2012 WL 2522147, at*6 (E.D. Cal. June 27, 2012) (permitting the ALJ to order a consultative exam only if it could shed light on the claimant's condition and RFC during the relevant period); *see also Battaglia v. Astrue*, No. 11-2045, 2012 WL 1940851, at *10 (E.D.N.Y. May 29, 2012) (finding that the ALJ correctly noted that ordering a consultative examination five years after the date last insured would not be probative of claimant's condition during the relevant period); *Nesheiwat v. Astrue*, No. 10-937, 2011 WL 7629494, at *9 (N.D.N.Y. Jul. 13, 2011) ("Simply ordering an examination that could provide nothing relevant to the ALJ's determination would not have developed the record.").  A retroactive diagnosis, like any other medical opinion, must be supported by substantial evidence.  *See Johnson v. Shalala*, 60 F.3d 1428, 1432-33 (9th Cir. 1995) (ALJ correctly rejected retroactive diagnosis because there was little medical evidence to support it).  Here, the medical records for the relevant period consists of a mere seven pages.  *See* AR at 237, 396-401. Thus, a consultative examiner would not have been able to offer a supported opinion of plaintiff's pre-DLI limitations.  A consultative examiner would only have been able to opine on plaintiff's current condition, which was not in dispute.

Accordingly, the AC did not err.  The AC's RFC determination was supported by substantial evidence and the AC did not have a duty to order a consultative examination.

19

1  **E.     The AC Properly Found That Grid Rule 201.21 Was Inapplicable**[16]

2          Plaintiff contends that the AC incorrectly found that Grid Rule 201.21

3  compelled a finding of not disabled.  P. Mem. at 26-27.  Specifically, plaintiff

4  argues that the AC should have determined that his RFC is less-than-sedentary, in

5  which case, Grid Rule 201.21 requires a disability finding.  *Id.* at 27.

6          As discussed above, the AC properly found that, during the relevant period,

7  plaintiff had the RFC to perform the full range of sedentary work.  AR at 7.  Thus,

8  Grid Rule 201.21 requires a finding of not disabled.

9                                          **V.**

10                                   **CONCLUSION**

11         IT IS THEREFORE ORDERED that Judgment shall be entered

12  AFFIRMING the decision of the Commissioner denying benefits, and dismissing

13  this action with prejudice.

14

15

16  DATED: August 31, 2012

                                    _____
17                                   SHERI PYM
                                    United States Magistrate Judge

18

19

20

21

22

23
     _____

24         [16]   In the memorandum, plaintiff states that the issue is whether Grid Rule

25  201.12 compelled a finding of non-disability.  P. Mem. at 26-27.  But both the
     ALJ and AC based their decisions on an application of Grid Rule 201.21.  AR 7,
26  24.  Grid Rule 202.12 applies to persons closely approaching advanced age, which

27  plaintiff was not during the relevant period.

28                                          20